No. 26-10118

U.S. COURT OF APPEALS
RECEIVED
Apr 27, 2026
FIFTH CIRCUIT

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

FUYAN WANG,
Plaintiff-Appellee,
v.
CONGHUA YAN,
Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Civil Action No. 4:25-cv-01247-P
The Hon. Mark T. Pittman, Presiding

## OPENING BRIEF OF DEFENDANT-APPELLANT

Respectfully submitted:

Conghua Yan
2140 E. Southlake Blvd., Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Pro Se Litigant

1

**Certificate of Interested Persons**

Defendant-Appellant Conghua Yan certifies that the following persons and entities, as described in Fifth Circuit *Rule 28.2.1*, have an interest in the outcome of this appeal:

Plaintiff-Appellee: Fuyan Wang.

Defendant-Appellant: Conghua Yan.

Counsel for Plaintiff-Appellee known to Appellant from the underlying proceeding: Cody W. Martin; Erika Patino.

No publicly held corporation or other publicly owned company is known to Appellant to have a financial interest in the outcome of this appeal.

Related Case: Two related cases involve the **same** U.S. Bank ERISA retirement account at issue in this appeal. No. 26-10286, *Yan v. State Bar of Texas et al.* (5th Cir.), is currently pending before this Court. The underlying district court action is No. 4:23-cv-00758-P (N.D. Tex.).

*/s/ Conghua Yan*
Conghua Yan, Pro Se Defendant-Appellant

## Statement Regarding Oral Argument

Appellant respectfully requests oral argument. This appeal presents a recurring and important federal question: whether a removed state petition labeled "contempt" can be remanded under *Younger*/*Juidice* even though the petition sought **ERISA**-governed implementation and clarification relief, no valid QDRO existed, the plaintiff never appeared in federal court, and the district court supplied non-jurisdictional/waivable abstention on its own motion. It also presents preserved, arguable federal questions of first impression concerning *sua sponte Younger* in a removed case, the sequencing of **ERISA** and *Juidice*, the proper scope of *Brown v. Cont'l Airlines, Inc.*, 647 F.3d 221 (5th Cir. 2011), and the *Quackenbush* treatment of a petition that includes a money judgment payable directly to private counsel. Those preserved first-impression questions are substantial and **not** frivolous. The appeal also preserves the unresolved *Juidice*/**ERISA** collision for further review.

Statement Regarding Publication

Appellant respectfully submits that, if the Court reaches the merits, a published opinion is warranted. This appeal presents recurring questions not answered by any published Fifth Circuit decision: whether *Sprint v. Jacobs* requires category-three *Younger*/*Juidice* analysis before a removed state enforcement petition containing both contempt and non-contempt ERISA-related prayers may be remanded; and whether *Younger*/*Juidice* abstention remains available where the removed relief falls within ERISA *§ 502(a)(3)* and Congress assigned such claims to exclusive federal jurisdiction under *29 U.S.C. § 1132(e)(1).*

Publication would satisfy *Fifth Circuit Rule 47.5.1* because the case applies established abstention and **ERISA**-removal principles to materially different facts: a removed Chapter 9 enforcement action, no valid QDRO, a plaintiff who never appeared in federal court, *sua sponte* invocation of a waivable abstention doctrine, and a district-court order that treated abstention as "fully dispositive" without first deciding whether **ERISA** complete preemption and exclusive federal jurisdiction made the state forum inadequate. A published opinion would give needed guidance on the proper sequencing of *Sprint*, *Juidice*, *Davila*, *Arana*, *Quackenbush*, and *§ 1132(e)(1)* in removed **ERISA**/domestic-relations enforcement cases. Publication is especially warranted because the contrary rule would create a repeatable evasion device: any state-court petitioner could add one possible or conditional contempt

4

request to an otherwise mixed civil petition and thereby invoke *Juidice* without satisfying *Sprint*'s exceptional-category requirement.

**Table of Contents**

Certificate of Interested Persons ..............................................................................................2

Statement Regarding Oral Argument ......................................................................................3

Statement Regarding Publication...........................................................................................4

Table of Contents ...................................................................................................................6

Table of Authorities................................................................................................................7

Jurisdictional Statement .........................................................................................................9

Introduction...........................................................................................................................11

Issues Presented ...................................................................................................................18

Statement of the Case...........................................................................................................20

Statement of Facts ................................................................................................................24

Summary of the Argument....................................................................................................29

Standard of Review...............................................................................................................31

Argument and Authorities ....................................................................................................34

I. The district court improperly supplied *Younger*/*Juidice* on its own motion and remanded for a non-appearing plaintiff despite waiver. ....................................................................................34

II. The removed petition was not a true *Juidic*e-type contempt proceeding. ............................39

III. ERISA complete preemption, exclusive federal jurisdiction, and anti-alienation required the district court to decide ERISA before abstention. ..................................................................46

IV. The district court's adequacy finding and de novo review rationale cannot stand. ...............57

V. Even if abstention were otherwise available, *Quackenbush* and *Deakins* barred outright remand—or at minimum required stay analysis. ...................................................................61

Conclusion ...........................................................................................................................67

Certificate of Service ...........................................................................................................68

Certificate of Compliance.....................................................................................................69

*Pertinent statutory provisions are supplied in a separate Addendum of Statutory Provisions under Federal Rule of Appellate Procedure 28(f).*

**Table of Authorities**

## Cases

*375 Slane Chapel Rd., LLC v. Stone Cnty.*, 53 F.4th 1122 (8th Cir. 2022)............................................ 16, 42

*ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013) .................................................... 48

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) ............................................................................. 11, 47

*Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160 (10th Cir. 1999) ................................... 37

*Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.*, 162 F.4th 532 (5th Cir. 2025)................... 63

*Arana v. Ochsner Health Plan, Inc.*, 338 F.3d 433 (5th Cir. 2003) (en banc)................................. 11, 32, 48

*BEPCO, L.P. v. Santa Fe Minerals, Inc.*, 675 F.3d 466 (5th Cir. 2012)...................................................... 66

*Bright v. Westmoreland Cnty.*, 380 F.3d 729 (3d Cir. 2004)...................................................................... 38

*Brown v. Cont'l Airlines, Inc.*, 647 F.3d 221 (5th Cir. 2011) .......................................................... 3, 12, 53

*Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361 (1st Cir. 1995) .................... 54

*Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992)................................................................ 48

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)........................................................................................... 62

*Colonial Life & Accident Ins. Co. v. Medley*, 584 F. Supp. 2d 368 (D. Mass. 2008)............................. 54

*Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc)................................................................. 36

*Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) (en banc)................................................................. 32

*Day v. McDonough*, 547 U.S. 198 (2006)................................................................................................. 37

*Deakins v. Monaghan*, 484 U.S. 193 (1988) ............................................................................................ 65

*E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991) ....................................................................... 48

*Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967)........................................................................................... 41

*Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013)................................................................. 63

*Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891 (5th Cir. 2023) ................................................ 49

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)................................................................................. 40

*Grace Ranch, LLC v. BP Am. Prod. Co.*, 989 F.3d 301 (5th Cir. 2021)....................................... 9, 32, 66

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) .............................................. 31, 63

*GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469 (6th Cir. 1997)............................................................ 54

*Hogan v. Kraft Foods*, 969 F.2d 142 (5th Cir. 1992) ............................................................................... 58

*Juidice v. Vail*, 430 U.S. 327 (1977)........................................................................................................ 13

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009)............................................ 56

*Kolwe v. Civil & Structural Eng'rs, Inc.*, No. 20-30564, 2021 WL 1727609 (5th Cir. Apr. 30, 2021) (per curiam) (unpublished)............................................................................................................................. 22

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996)......................................................... 27

*Majors v. Engelbrecht*, 149 F.3d 709 (7th Cir. 1998)............................................................................. 37

*Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453 (3d Cir. 2019) ..................................................... 16, 42

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)................................................................................. 31, 63

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016) .................... 63

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)................. 29, 34, 54

*Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471 (1977)................................................................. 39

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) ..................................... 36

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)....................................................................................... 36

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ........................................................................... 9

*Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006) .................................................................. 64

*Sherfel v. Newson*, 768 F.3d 561 (6th Cir. 2014)..................................................................................... 47

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015) ............................................................... 55

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886 (3d Cir. 2022) ................................ 16, 36

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)................................................29, 32, 34, 39
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)................................................52
*Swisher v. Brady*, 438 U.S. 204 (1978)................................................39
*Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515 (5th Cir. 2004) ................................................31
*Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336 (1976) ................................................66
*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)................................................66
*TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230 (3d Cir. 2022)................................................16
*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ................................................37, 38
*Universal Amusement Co. v. Vance*, 587 F.2d 159 (5th Cir. 1978) (en banc) ................................................34
*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)................................................47
*Walker v. City of Birmingham*, 388 U.S. 307 (1967)................................................45
*Wood v. Milyard*, 566 U.S. 463 (2012)................................................37

## Statutes

*28 U.S.C. § 1291*................................................9
*28 U.S.C. § 1331*................................................9
*28 U.S.C. § 1441*................................................9
*28 U.S.C. § 1447(c)*................................................9, 66
*29 U.S.C. § 1056(d)(1)*................................................55, 65
*29 U.S.C. § 1056(d)(3)(A)*................................................55
*29 U.S.C. § 1056(d)(3)(B)(i)*................................................55
*29 U.S.C. § 1056(d)(3)(G)(i)(II)*................................................25
*29 U.S.C. § 1056(d)(3)(H)(i)–(v)*................................................43, 56
*29 U.S.C. § 1056(d)(3)(J), (K)*................................................56
*29 U.S.C. § 1132(a)(3)*................................................23, 30
*29 U.S.C. § 1132(e)(1)*................................................23
*29 U.S.C. § 1144(b)(7)*................................................51
*Tex. Fam. Code § 9.008(b)–(d)*................................................41
*Tex. Fam. Code § 9.012*................................................41
*Tex. Fam. Code § 9.014*................................................31, 63, 65

## Other Authorities

Daniel C. Norris, *The Final Frontier of Younger Abstention: The Judiciary's Abdication of the Federal Court Removal Jurisdiction Statute, 31 Fla. St. U. L. Rev. 193, 219 (2003)* ................................................35
Erwin Chemerinsky, *Federal Jurisdiction § 13.3* (8th ed. 2021)................................................35

**Jurisdictional Statement**

1.      The district court had removal jurisdiction under *28 U.S.C. §§ 1331* and *1441* because the removed petition, properly construed, sought relief that duplicated, supplemented, or supplanted **ERISA**'s civil-enforcement scheme and therefore arose under federal law. Properly understood, the petition did **not** present a true QDRO-enforcement action. It cloaked an *additional* **ERISA**-fund dispute as "enforcement" by seeking compelled retirement-plan disbursement, attorney's fees and costs payable directly to counsel, and *alternative* clarification of decree language governing an ERISA-governed plan even though no valid QDRO yet existed.

2.      The notice of removal stated that the new petition did "not include the minor child as a party" and that "no child custody, child support, or state interest issues are pled," ROA.5 [¶3], and it identified the federal question on the face of the removed case, ROA.5–6 [¶¶5–6]. The civil cover sheet also designated the case under Nature of Suit 791 (**ERISA**). ROA.9.

3.      This Court has appellate jurisdiction under *28 U.S.C. § 1291*. The district court remanded on abstention grounds rather than under *28 U.S.C. § 1447(c)*, and abstention-based remand orders are appealable. *Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 711-12 (1996)*; *Grace Ranch, LLC v. BP Am. Prod. Co., 989 F.3d 301, 310-11 (5th Cir. 2021)*.

4. The remand order was entered on February 6, 2026. ROA.99. Appellant filed a timely Rule *59(e)* motion on February 7, 2026. ROA.109. The district court denied that motion on February 9, 2026, ROA.140, and Appellant filed his notice of appeal later that same day. ROA.141. The appeal was docketed in this Court as No. 26-10118.

**Introduction**

5.     This case asks whether a federal court may use a judge-made abstention doctrine to return an **ERISA** retirement-plan dispute to state court — without deciding whether **ERISA** governs, without a valid QDRO, without the plaintiff ever appearing, and on the basis of a petition that admitted on its face that contempt was **not** yet available. The district court remanded this **ERISA** case without addressing **ERISA** at all. The FCR and remand order never cited *29 U.S.C. § 1132(e)(1)*, *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), *Arana v. Ochsner Health Plan, Inc.*, 338 F.3d 433 (5th Cir. 2003) (en banc), or **ERISA**'s anti-alienation rule, even though the case was docketed as Nature of Suit 791. ROA.9. Appellant raised complete preemption, exclusive federal jurisdiction, the absence of a valid QDRO, and anti-alienation in his Answer, objections, *Rule 59(e)* motion, and supplemental brief. ROA.48; ROA.62; ROA.109; ROA.132. The remand order never engaged those arguments. ROA.99-101. That omission is **not** a minor gap in analysis; it is the premise on which the remand order rests.

6.     The threshold fact that controls this appeal is **not** a legal inference or a disputed characterization — it is the petitioner's own words. The removed petition expressly stated: if the decree is "not specific enough to be enforced by contempt," the court should "enter a clarifying order" so that contempt could issue later. ROA.17 [§6]. A petition that admits on its face that contempt may **not** yet be available is **not**

a *Juidice*-type contempt proceeding. It is a petition to create the predicate for *future* contempt that does **not** yet exist. The district court never acknowledged this language. It accepted the contempt label and remanded without reading what the petition actually asked for.

7.      The district court's sole citation for dismissing every ERISA argument was *Brown v. Continental Airlines, Inc.*, 647 F.3d 221 (5th Cir. 2011). But *Brown* addressed one narrow question: whether a plan administrator may refuse to treat an already-submitted domestic relations order as a QDRO on the ground the underlying divorce was a sham. *Brown* never mentioned *Younger*, *Juidice*, *Sprint*, complete preemption, *§ 1132(e)(1)*, forum adequacy, or *Quackenbush*. It never addressed state court jurisdiction over **ERISA** claims. It never addressed a case where no QDRO had been signed, submitted, or reviewed. *Brown* recognizes the QDRO path; it does not authorize bypassing the QDRO path. Here, *Brown* cannot supply legal analysis for questions it never considered. A case about administrator review criteria for already-completed QDRO transactions does **not** resolve whether a contempt petition demanding immediate disbursement before any QDRO exists is completely preempted, whether the state forum was adequate, or whether *Quackenbush* and *Deakins* barred remand. The district court substituted a label — "this involves a QDRO" — for the legal analysis each of those questions required.

8.      Those threshold defects — a petition that admitted contempt was unavailable, and a district court that dismissed all **ERISA** arguments with a case that never addressed them — frame the five issues this appeal presents. The same label problem operates in two doctrinal places. For *Juidice*[1], the contempt label did **not** create an already-ripe judicial contempt process. For *Davila*, the contempt label did **not** change the source of the right asserted or the source of the limitation on relief. The petition's substance, **not** its caption, controls both inquiries.

9.      This appeal presents *two* important federal questions that the Supreme Court has **not** squarely resolved together **after** *Sprint*: whether *Younger*/*Juidice* may be used to remand a removed state case when the underlying requested relief is governed by **ERISA**'s exclusive remedial structure and anti-alienation rule; whether a district court may invoke *Younger sua sponte* to decline to exercise jurisdiction in a removed case when the plaintiff **never** appeared and **no** party sought remand or invoked abstention. The appeal also presents the remedial question whether *Quackenbush* and *Deakins* permitted outright remand despite the petition's debt-like monetary fee demand.

10.     The district court treated abstention as fully dispositive, characterized the removed petition as a state-court contempt proceeding in substance, and remanded without first deciding whether the requested relief was **ERISA**-governed, whether

---

[1] *Juidice v. Vail,* 430 U.S. 327, 338-39 (1977).

any valid QDRO existed, or whether prudential abstention could be invoked *sua sponte* when the plaintiff **never** appeared and **no** party sought remand or abstention.

11.     That sequencing error mattered because the removed case was docketed as Nature of Suit 791 (**ERISA**), and *Davila*, *Arana*, and *Sprint* required the court to confront the threshold **ERISA** question before resorting to prudential abstention. Because no Fifth Circuit decision resolves this combination of removal, **ERISA**, contempt labeling, and *sua sponte* abstention, this case is **not** just an error-correction appeal; it is a first-impression opportunity to adopt the proper sequencing rule for future removed **ERISA**/domestic-relations cases.

12.     The first and most important question is the unresolved collision between *Juidice* and **ERISA**. *Juidice* protects an **existing** state contempt process because contempt stands in aid of the authority of the judicial system. **ERISA**, by contrast, supplies a comprehensive federal remedial structure, an anti-alienation rule, and strict QDRO limits in the domestic-relations setting. The Supreme Court has **not** squarely resolved whether a state litigant may defeat **ERISA**-based removal simply by styling an additional **ERISA**-fund dispute as QDRO enforcement or contempt before a federal court decides whether **ERISA** governs at all — especially where the petition seeks extra attorney-fee recovery from **ERISA**-protected assets even though no valid QDRO has yet been drafted, issued, or determined to be qualified.

14

13. That collision is especially concrete here because the petition demanded '*immediate*' disbursement, while **ERISA** assigns QDRO qualification to the plan administrator, requires separate accounting of disputed amounts, and uses an <u>18-month segregated-amounts framework</u> rather than <u>contempt-backed</u> *immediate* participant-side surrender of disputed plan funds.

14. The second unresolved question concerns the limits of *sua sponte Younger*. Federal courts have a virtually unflagging obligation to exercise jurisdiction except in exceptional circumstances. Yet here the plaintiff **never** appeared, **never** moved to remand, **never** invoked abstention, and **never** asked the district court to supply a prudential defense on her behalf. This case therefore presents the sharpest version of the problem identified in Appellant's preserved filings: whether a district court may deploy *Younger*/*Juidice* on its own motion to surrender congressionally conferred jurisdiction. The point is not that the district court had to decide the full **ERISA** merits before doing anything else. The narrower and controlling point is that the court had to decide enough of the **ERISA** complete-preemption and exclusive-jurisdiction question to know whether *Younger*/*Juidice* was even available, whether the state forum was legally adequate, and whether a contempt label could overcome Congress's jurisdictional allocation.

15. The Third and Eighth Circuits have held that a mere threat or possibility of future contempt does **not** trigger *Juidice*/*Younger*, and the Eighth Circuit has

collected Second, Sixth, and Ninth Circuit decisions reflecting the same narrow understanding of *Sprint*'s third category: it reaches only proceedings involving mechanisms **uniquely** in furtherance of the courts' judicial functions, **not** ordinary orders that are merely the output of those functions. *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 237–38 (3d Cir. 2022); *375 Slane Chapel Rd., LLC v. Stone Cnty.*, 53 F.4th 1122, 1127–29 (8th Cir. 2022); *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 461–63 (3d Cir. 2019). *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 894–95 (3d Cir. 2022), reinforces the same point by explaining that if a mere threat of contempt were enough, courts would have to abstain in nearly every civil case because contempt is generally available to enforce court orders.

16.     Here, by contrast, the district court treated a petition that itself sought clarification and *future* contempt as if it already involved the type of already-ripe judicial contempt process *Juidice* protects. This case therefore presents a precise opportunity for clarifying that a mere threat or possibility of future contempt is **not** the same thing as an already-existing judicial contempt process.

17.     The importance of these questions extends beyond one removed petition. This is **not** only an **ERISA**/domestic-relations problem; it is a general *Sprint* evasion problem. If one possible or conditional contempt request can convert an otherwise mixed civil petition into a *Juidice* proceeding, then *Sprint*'s narrowing of *Younger* becomes easy to evade. A state-court petitioner could plead extensive non-contempt

relief—implementation, clarification, fee recovery, turnover, injunction, plan-directed relief, or other coercive remedies—and add one line requesting possible contempt, thereby preventing federal adjudication without satisfying *Sprint*'s exceptional-category requirement. And if a district court may supply *Younger* on behalf of a silent plaintiff and remand without deciding **ERISA** first, then prudential abstention becomes a mechanism for <u>surrendering congressionally conferred jurisdiction without adversarial testing</u>. Those problems are recurring and system-level, **not** case-specific.

18. This case is an unusually clean vehicle for resolving those questions because the record presents a rare combination of features appellate courts seldom receive together: a removed **ERISA** dispute, a contempt label used as the basis for abstention, a nonappearing plaintiff, a *sua sponte* remand order, and a district court decision that never decided whether **ERISA** controlled before giving the case back. The remand order should be vacated so this Court can clarify the proper relationship among **ERISA**, *Juidice*, *Sprint*, and the party-presentation principle in an area of recurring national significance.

**Issues Presented**

1) Whether the district court erred by *sua sponte* invoking *Younger*/*Juidice* to remand a removed case when Appellee did **not** appear, did **not** move to remand, and did **not** invoke abstention; *Younger* is non-jurisdictional and waivable; and Appellant timely objected and asserted waiver.

2) Whether the removed petition fell outside *Juidice*'s scope and *Sprint*'s third category because it sought **ERISA**-governed implementation and clarification relief, direct fee awards to private counsel, and alternative clarification precisely because the decree was allegedly **not** specific enough for contempt—making contempt at most a *possible future* remedy rather than an *already-ripe* judicial contempt process.

3) Whether **ERISA** complete preemption, exclusive federal jurisdiction under *29 U.S.C. § 1132(e)(1)*, and **ERISA**'s anti-alienation rule foreclosed abstention-based remand where no valid QDRO existed and the petition sought relief within or dependent on **ERISA**'s civil-enforcement scheme; or, at minimum, whether the district court erred by treating abstention as "fully dispositive" without first deciding those threshold **ERISA** questions.

4) Whether the district court's adequacy finding and Rule *72(b)(3)* de novo-review rationale fail because a state contempt hearing is **not** equivalent to an

**ERISA** *§ 1132(a)(3)* action, cannot supply the same federal equitable relief, and was asked to validate compelled disbursement from an **ERISA** plan and direct fee awards from plan assets—relief the state forum lacked authority to compel.

5) Whether, even if abstention were otherwise available, *Quackenbush* and *Deakins* barred outright remand—or at minimum required stay analysis—because the petition sought a debt-like money judgment for attorney's fees, expenses, and costs payable directly to private counsel.

**Statement of the Case**

19.     This appeal arises from a removed state-court enforcement action concerning Appellant's **ERISA**-governed U.S. Bank retirement plan. Related federal litigation concerning the same plan is pending in the Northern District of Texas as *Yan v. State Bar of Texas et al.*, No. 4:23-cv-00758-P, after this Court dismissed a prior appeal for lack of final judgment and remanded for further proceedings in *Yan v. State Bar of Texas*, No. 24-10543 (5th Cir. Sept. 29, 2025). That related litigation is referenced only to show the overlapping **ERISA**-plan context, the district court's notice of Appellant's federal objections concerning the same retirement account, and why the removed petition was **not** an ordinary self-contained contempt matter.

20.     While the RICO suit was pending in federal court, in October, 2025, Appellee filed a separate petition in state court seeking to enforce provisions of a divorce decree concerning the same U.S. Bank retirement plan. That **separate** petition is the case now on appeal.

21.     The petition did **not** limit itself to backward-looking contempt. Although the decree awarded Appellee a percentage interest in the U.S. Bank plan, ROA.16, the petition went further and asked the court to "direct[] Respondent to immediately process the disbursement of the retirement plan by a date certain," ROA.17 [§5], to "direct[] Respondent to immediately provide the required information to complete the QDRO (see Exhibit A)," ROA.17 [§5], to render attorney's fees, expenses, and

costs "in favor of the attorney" and "paid directly to the undersigned attorney," ROA.17 [§7], and, if the decree was "**not** specific enough to be enforced by contempt," to enter a clarifying order restating the decree so it could later be enforced by contempt. ROA.17 [§6]. The supplemental civil cover sheet described Appellee's requested relief as including an order to "[c]ompel Conghua Yan to transfer retirement 401(k) fund" and to "hold Yan in criminal contempt confinement up to 18 months in jail." ROA.12. In substance, the petition did **not** present a *completed* QDRO-enforcement dispute; it sought to turn an additional **ERISA**-fund dispute into mirrored QDRO enforcement even though **no** existing QDRO yet supplied a present payment obligation.

22. Appellant removed the state-court case to federal court on November 4, 2025, ROA.5, where it was docketed as No. 4:25-cv-01247, arguing that the petition, properly construed, sought relief falling *within* **ERISA**'s **civil-enforcement** scheme and therefore arose under *federal* law. The Notice of Removal emphasized that the petition did "**not** include the minor child," pled **no** child-custody, child-support, or state-interest issue, and proceeded only as an enforcement claim against Appellant's **ERISA** plan. ROA.5–6.

23. Appellant also filed an Answer contesting the legality of the requested relief under **ERISA**. Appellee never appeared in federal court, never moved to remand, and never invoked abstention. The removed action was docketed in federal court as

Nature of Suit 791 (**ERISA**), ROA.9, underscoring that even administratively the case was being treated as an **ERISA** matter when the district court later bypassed **ERISA** and remanded on abstention grounds alone. ROA.99-101.

24.     On November 25, 2025, the magistrate judge issued findings, conclusions, and a recommendation recommending remand on abstention grounds. The recommendation characterized the case as a state contempt proceeding and relied on *Juidice* and *Kolwe*[2]. ROA.59-61.

25.     Appellant timely objected. ROA.80. His objections argued, among other things, that the petition was **not** a post-QDRO contempt motion, ROA.83; that it sought mirrored **ERISA**-governed implementation, clarification, and <u>additional attorney fee relief</u>; that **no** valid QDRO existed; that **no** plan-administrator review fee had yet been incurred; that the subject matter of any enforcement therefore did **not** yet exist, ROA.87; that the state contempt forum was **not** adequate for such ERISA relief, ROA.94–96; that *Younger* is prudential and waivable, ROA.92; and that *Quackenbush* barred remand even if abstention applied, ROA.89–91.

26.     On February 6, 2026, the district court entered an order adopting the FCR. ROA.99-101. The order stated that it was sufficient to address only abstention because abstention was "fully dispositive." It characterized the removed matter as

---

[2] *Kolwe v. Civil & Structural Eng'rs, Inc.*, No. 20-30564, 2021 WL 1727609 (5th Cir. Apr. 30, 2021) (per curiam) (unpublished).

"in substance, a state-court contempt proceeding," held that Appellant had an adequate opportunity to present federal issues in state court, and remanded all claims to the 360th District Court. The order **never** discussed **ERISA**, *§ 1132(e)(1)*, *Davila*, or the absence of a valid QDRO. ROA.99-101.

27.     The order also stated that it was overruling "**Plaintiff**'s Objections," ROA.99, although Appellant-**Defendant** filed the objections and Appellee-**Plaintiff** did **not**. The order's text reflects that de novo review did **not** occur in any meaningful sense: it misidentified the objecting party as "Plaintiff" when Defendant filed the objections, ROA.80, misstated the FCR date as "November 11, 2025," ROA.99, when the docket shows ECF No. 7 was entered November 25, 2025, ROA.58–59, never cited *Davila*, *Arana*, or *§ 1132(e)(1)* , and never addressed the Answer that had already catalogued the anti-alienation, no-QDRO, and federal-impossibility arguments. ROA.58, ROA.61-72. Appellant then filed a *Rule 59(e)* motion on February 7, 2026, and a supplemental brief on February 9, 2026, explaining that the petition lacked any genuine contempt predicate, that the court had supplied *Younger sua sponte*, that the petition sought **ERISA**-governed relief, that **ERISA** complete preemption and the federal-court assignment of *§ 1132(a)(3)*-type equitable relief under *§ 1132(e)(1)* had to be decided **first**, and that prudential comity could **not** substitute for deciding that threshold **ERISA** question. The district court denied

those motions on February 9, 2026. Appellant filed his notice of appeal later that same day. Those motions preserved the principal federal issues presented here.

28. This appeal followed.

**Statement of Facts**

29. The decree language at issue contemplated a division of retirement benefits to be effectuated through a qualified domestic relations order. But when Appellee later filed the enforcement petition, **no** court-signed QDRO yet **existed**, **no** plan-administrator review **fee** had yet been **incurred**, and the decree did **not** direct Appellant to sign any particular QDRO, cause any specific distribution by a date certain, or perform any QDRO-related act by a stated deadline.

30. For the reasons described in paragraph 21 above, the petition's requested-relief section did **not** merely ask the court to punish a completed violation of a clear, existing order. It also sought immediate implementation relief, fee recovery payable directly to counsel, and clarification because the decree was allegedly **not** yet specific enough for contempt. Properly understood, the petition sought additional attorney-fee recovery from **ERISA**-protected plan assets on a legally insufficient premise while **no** valid QDRO yet **existed**.

31. Those requests mattered because **ERISA** governs assignment and alienation of pension benefits, and the QDRO mechanism operates through plan-administrator review and implementation of a valid domestic-relations order. Appellant's Answer

24

pointed out that **ERISA** requires the plan administrator to review any proposed order, determine whether it qualifies, segregate disputed funds if necessary, and only then authorize distribution consistent with *§ 1056(d)(3)*. ROA.68–69. That preserved point — that **ERISA** barred compelled immediate disbursement absent a valid QDRO and did **not** authorize contempt to force a federally prohibited transfer — is reinforced by **ERISA**'s statutory structure: once a domestic-relations order is in play, the plan administrator **must** determine qualified status within a reasonable period after receipt of the order, *29 U.S.C. § 1056(d)(3)(G)(i)(II),* separately account for amounts that would otherwise have been payable during the dispute, and follow the statute's 18-month segregated-amounts framework, *id. § 1056(d)(3)(H)(i)–(v)*, beginning on the date the first payment would otherwise be required under the order.

32.    Absent a domestic relations order determined to be a QDRO, Appellee had **no** presently enforceable right to compel payment from the **ERISA** plan, and the statute assigned the qualification and distribution functions to the plan administrator rather than to Appellant personally. The petition's demand for "immediate" disbursement, ROA.17, therefore sought to use state-court coercion to *short-circuit* **ERISA**'s own safeguards and to *replace* the plan administrator's statutory sequence with contempt pressure against the participant personally. Absent a valid QDRO, the petition was **not** genuine QDRO enforcement at all; it was an *additional* **ERISA**-fund dispute

25

cloaked as QDRO enforcement and used to seek <u>extra attorney-fee recovery</u> for **ERISA** regulated action in state court.

33. Appellant's federal filings repeatedly focused on that mismatch. He argued that the petition was really an extra implementation action concerning **ERISA**-governed benefits; that a state contempt hearing could **not** furnish a full ERISA cause of action or the federal equitable relief available under *§ 1132(a)(3)*; that one cannot hold a party in contempt for violating an order that does **not** yet exist; and that the district court could **not** sidestep those questions by treating the matter as contempt in gross. The Answer further stated that, without an existing QDRO, the proceeding was properly characterized as a dispute over **ERISA** plan benefits, **not** the type of core contempt or quasi-criminal enforcement action to which *Younger* gives special deference. ROA.71-72.

34. The federal characterization was **not** an afterthought. From removal forward, Appellant identified the earlier **plan-related restraints** as part of the **same ERISA**-fund context: the removal filing listed both a "First Writ of Garnishment in prior case" and a "Second Writ of Garnishment in prior case" among the state-court documents attached to the Notice of Removal. ROA.7; ROA.13; ROA.33–41. In the Answer, Appellant also informed the district court that he had already raised related federal claims concerning the same ERISA-protected retirement account.

35.    That related action — *Yan v. State Bar of Texas et al.*, No. 4:23-cv-00758-P (N.D. Tex.) — is a matter of public federal court record of which this Court may take judicial notice under Federal Rule of Evidence 201. See *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996). Public filings in that case alleged a scheme to extract funds from the same U.S. Bank **ERISA** account at issue here through orders characterizing attorney-fee payments as "spousal support," and those filings also referenced two prejudgment writs of garnishment directed at the same account. This Court's remand in No. 24-10543 confirms that the related federal litigation remained pending for further proceedings, **not** finally resolved, when the district court treated the removed petition as a routine state contempt matter.

36.    The overlap matters here only for jurisdiction, sequencing, and adequacy. Appellant had consistently framed the dispute as an **ERISA**-centered federal controversy involving the **same** retirement account, not as a routine contempt matter. The district court did **not** address that record-based objection. It accepted the label "contempt," concluded that Texas contempt procedure was adequate because federal defenses could be raised there, and remanded without first determining whether *ERISA* preempted the requested relief or whether the proceeding fit any of Sprint's narrow *Younger* categories.

37.    Appellant's preserved theory was **not** merely that the petition was premature. It was that the pleaded sequence made the petition's contempt posture materially

different from ordinary QDRO enforcement. Appellant had already alleged in related federal litigation that the same **ERISA** account had been reached through prior plan-facing instruments, and the later petition did **not** simply request neutral QDRO processing. The Answer preserved the specific **ERISA** theory that forced disbursement, garnishment, turnover, receivership, and contempt-backed forfeiture were barred absent a valid QDRO, and that the petition demanded contempt/incarceration first while seeking QDRO completion only afterward. ROA.68–69. It sought an order compelling Yan personally — under threat of contempt — to cause immediate disbursement of the same disputed **ERISA**-plan funds. ROA.17.

38.  Appellant also preserved the theory that the petition functioned as a continuation of the same **ERISA**-fund dispute: it used contempt pressure to continue or validate earlier restraints on the same retirement funds. ROA.68–69. That objective shift mattered to adequacy and **ERISA** sequencing because the petition sought to obtain through contempt pressure what **ERISA** allegedly barred absent a valid QDRO.

## Summary of the Argument

39.     The remand order should be vacated because the district court supplied *Younger*/*Juidice* on its own motion for a silent plaintiff. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction Congress gave them, and "only exceptional circumstances" justify refusing to decide a case in deference to the States. See *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77-78 (2013); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). Removal left **no** parallel state proceeding, and the district court never identified any separate ongoing proceeding that could support abstention. Applying *Younger* in that posture does **not** defer to another tribunal; it supplies a judicial reason to undo what Congress allowed Appellant to remove. At minimum, where no separate ongoing state proceeding remains and no party invoked abstention, *Younger* is structurally unavailable apart from any waiver question.

40.     Second, the removed petition was **not** a genuine *Juidice*-type contempt proceeding. It sought new implementation and clarification orders and admitted that the decree might **not** be specific enough for contempt. **Without** a court-signed QDRO, **without** a pleaded charged review fee, and **without** a clear existing command that Appellant could violate, the petition did **not** present the sort of already-ripe contempt process *Juidice* protects. At most it presented the ordinary

**possibility** that any future noncompliance with a future order could later lead to contempt, which is **not** enough.

41.    Third, **ERISA** made remand especially improper. The petition asked the court to compel plan-related disbursement, and **award** <u>plan-related enforcement fees directly to counsel</u>. Those reliefs necessarily duplicated, supplemented, or supplanted **ERISA**'s remedial framework. They also conflicted with **ERISA**'s administrator-centered process for disputed domestic-relations orders, which reinforces Appellant's preserved position that contempt could **not** be used to compel *immediate* participant-side disbursement before **ERISA**'s own qualification and protection mechanisms had run their course. Because **no** valid QDRO existed, **ERISA**'s anti-alienation rule remained in force. The district court therefore had to determine whether **ERISA** governed before it could remand on comity grounds. That sequencing error matters because it bypassed the first-impression **ERISA**/*Juidice* question whether a judge-made abstention doctrine may displace Congress's exclusive federal forum for the equitable relief asserted here.

42.    Fourth, the district court's adequacy finding and de novo-review rationale cannot stand. A state contempt hearing is **not** the same thing as an **ERISA** *§ 1132(a)(3)* action. It cannot provide the same declaratory and injunctive remedies, and it was being used here to validate compelled disbursement from an **ERISA** plan and direct fee awards from plan assets—relief the state forum lacked authority to

compel before **ERISA**'s QDRO safeguards were satisfied. The order's conclusory assurance that "any federal [ERISA] issues" could be raised in state court therefore did **not** answer the preserved objections. ROA.100.

43.     Fifth, even if abstention had some place here, outright remand did **not**. The petition sought a <u>monetary judgment for attorney's fees, expenses, and costs payable directly to counsel</u>. Under *Quackenbush* and *Deakins*, that debt-like monetary component made outright remand especially problematic and at minimum required the district court to consider whether a stay, rather than remand, was the outer limit of any abstention remedy. The fee demand here was **not** ancillary equitable relief. The petition expressly sought a money judgment "in favor of the attorney" payable "directly to the undersigned attorney," enforceable under *Tex. Fam. Code § 9.014* as a judgment for debt in counsel's own name. Under *[Great-West Life & Annuity Ins. Co. v. Knudson](#)*, 534 U.S. 204, 210 (2002), and *[Mertens v. Hewitt Assocs.](#)*, 508 U.S. 248, 255 (1993), compelling payment of a sum of money is legal relief regardless of label. A debt-like money judgment payable to private counsel does **not** become equitable because it was pleaded alongside contempt sanctions.

### Standard of Review

44.     Whether *Younger* abstention applies is reviewed de novo as to the doctrine's prerequisites and abuse of discretion as to the ultimate decision to abstain. *[Tex. Ass'n of Bus. v. Earle](#)*, 388 F.3d 515, 518 (5th Cir. 2004); *[Daves v. Dallas Cnty.](#)*, 64 F.4th

616, 629 (5th Cir. 2023) (en banc). Questions of subject-matter jurisdiction and complete preemption are reviewed de novo.

45.     The abuse-of-discretion gloss on the ultimate abstention decision presupposes a legally valid predicate exists. Where the threshold questions — whether *Sprint's* categories are met, whether **ERISA** preemption displaced *Younger*, and whether a non-jurisdictional doctrine was waived — are each pure questions of law, the entire analysis is reviewed de novo. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (reversing abstention as a matter of law). A court that applies an inapplicable doctrine has **not** exercised discretion; it has committed legal error. Questions of **ERISA** complete preemption are likewise reviewed de novo. *Arana v. Ochsner Health Plan, Inc.*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc).

46.     Whether an abstention-based remand order is appealable is also a legal question reviewed de novo. *Grace Ranch*, 989 F.3d at 310-11.

47.     The district court's later statement in its IFP order that this appeal raises **no** nonfrivolous issue does **not** affect the standard of review, but it underscores the legal character of the questions presented. Preserved first-impression questions on which circuits are *divided* and other legal points arguable on their merits are **not** frivolous — particularly where, as here, the district court had **no** binding precedent requiring the result it reached. Appellant also warned that, without a stay, rapid state-court

32

proceedings after remand could moot appellate review of those substantial federal

jurisdictional questions. ROA.127–129.

## Argument and Authorities

I. The district court improperly supplied *Younger*/*Juidice* on its own motion and remanded for a non-appearing plaintiff despite waiver.

48.     The order below made abstention "fully dispositive." ROA.100. But *Younger* is **not** a jurisdictional defect that federal courts must raise whenever they notice it. Federal jurisdiction, once it exists, carries a "virtually unflagging" obligation to decide the case, and "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Sprint*, 571 U.S. at 77–78; *NOPSI*, 491 U.S. at 368. The Fifth Circuit has also recognized that an unraised *Younger* issue may be treated as **not** before the court. *Universal Amusement Co. v. Vance*, 587 F.2d 159, 163 n.6 (5th Cir. 1978) (en banc). And where, as here, the removed case was docketed as Nature of Suit 791 (**ERISA**) and the federal question was whether the petition fell within **ERISA**'s civil-enforcement and anti-alienation framework, the court had to decide that threshold ERISA issue before resorting to prudential abstention. The district court nevertheless relied on *Kolwe*, an unpublished, nonprecedential decision, to do dispositive work that neither *Juidice*, *Davila*, *Arana*, nor *Quackenbush* permits. ROA.99-101.

49.     Removal independently changes the *Younger* analysis*,* especially here because the petition was a separate Chapter 9 enforcement action served by separate citation under a new cause number, **not** a continuing divorce trial. Once removed, that stand-alone enforcement action became the federal case. The district court made

**no** factual finding identifying any separate ongoing state proceeding after removal. ROA.99–101. It treated the removed petition itself as the state proceeding, but that proves the problem: once that stand-alone Chapter 9 enforcement action was removed, that proceeding was before the federal court. *Younger* cannot rest on an assumed parallel state case the order never identified. Applying *Younger* in that posture is **not** deference to another tribunal, but a judicially created basis for **surrendering** congressionally conferred removal **jurisdiction**. By treating the removed case itself as the "state proceeding," the district court collapsed *Younger*'s two-proceeding requirement into one, which is **not** what *Younger* permits.

50.     Scholarly commentary criticizing *Younger* in removed cases reinforces that conclusion. Appellant preserved that removed-case structural critique below. ROA.91. See Daniel C. Norris, *The Final Frontier of Younger Abstention: The Judiciary's Abdication of the Federal Court Removal Jurisdiction Statute, 31 Fla. St. U. L. Rev. 193, 219 (2003)* (describing application of *Younger* in the removal context as a 'dangerous, questionable, and important' development); see also Erwin Chemerinsky, *Federal Jurisdiction § 13.3* (8th ed. 2021) (criticizing extension of *Younger* to removed cases). This case presents the narrowest version of that problem: Appellee **never** appeared, **never** invoked abstention, and **no** separate state proceeding remained after removal. This Court should hold that *Younger* is

structurally unavailable in that posture; at minimum, a district court may **not** supply it *sua sponte* on behalf of a nonappearing plaintiff.

51.     That matters here because Appellee did **not** move to remand or invoke *Younger*. Appellant objected and argued waiver. ROA.80. Yet the district court supplied the abstention theory itself and then used it to send the case out of federal court. ROA.99-101. That sequence conflicts with the Fifth Circuit's treatment of *Younger* as non-jurisdictional and waivable. See *Tex. Ass'n of Bus.*, 388 F.3d at 519-20; *Daves v. Dallas Cnty.*, 22 F.4th 522, 545–46 (5th Cir. 2022) (en banc). *Daves* proceeded abstention analysis **only** <u>after the court found</u> the issue sufficiently preserved. The Third Circuit has likewise explained that a district court mistakenly treats *Younger* as jurisdictional when it raises the doctrine *sua sponte*, because *Younger* "is an abstention doctrine that instructs federal courts **not** to exercise jurisdiction they possess." *Smith & Wesson*, 27 F.4th at 897 n.1.

52.     The same concern appears here, where the district court invoked *Juidice* without any party requesting abstention. The Supreme Court has expressly left open whether abstention may be raised *sua sponte*, *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 17 n.12 (1987), and has made clear that *Younger* "does **not** arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). And even where a defense has public-interest

dimensions, the Supreme Court has held that a court may **not** bypass or override a party's deliberate waiver. *Wood v. Milyard*, 566 U.S. 463, 472–74 (2012). *Day* permitted limited *sua sponte* action only where the defense had been inadvertently overlooked, **not** deliberately abandoned. *Id.*; *Day v. McDonough*, 547 U.S. 198, 202, 209–11 (2006). This case is **not** one of express waiver in the *Wood* sense, but it is at minimum far beyond inadvertent omission: Appellee never appeared, never filed anything, never invoked abstention, and Appellant expressly raised waiver and forfeiture. Other circuits have therefore treated *Younger* as waivable. See *Majors v. Engelbrecht*, 149 F.3d 709, 710–11 (7th Cir. 1998); *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).

53.    That context further underscores why the district court should **not** have supplied prudential abstention on behalf of a silent plaintiff: Appellant's filings informed the district court that related federal litigation concerning the <u>same retirement plan</u> and alleged misconduct was <u>pending</u> in the <u>same court</u>. ROA.62-73.

54.    The Supreme Court's party-presentation decisions reinforce the point. In *Sineneng-Smith*, the Court admonished that in our adversarial system courts ordinarily act as neutral arbiters of the issues the parties present. *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020). *Day* allows limited court-initiated consideration of certain defenses only with careful safeguards and without overriding intelligent waiver. *Day v. McDonough*, 547 U.S. 198, 210-11 (2006).

*Wood* confirms that a court may **not** resurrect a deliberately abandoned defense. Nothing like the required safeguards occurred here. There was **no** finding that there had been **no** intelligent waiver, **no** explanation of why extraordinary circumstances justified judicial intervention, and **no** narrow tailoring of the inquiry.

55.    The district court did **not** merely raise an unargued doctrine. It constructed and resolved a complete legal theory for a plaintiff who presented nothing, argued that theory against Appellant, and ruled in favor of the party whose case it had just built from scratch. ROA.99-101. "Judicial opinions are the core work-product of judges. … they constitute the logical and analytical explanations of why a judge arrived at a specific decision. They are tangible proof to the litigants that the judge actively wrestled with their claims and arguments and made a scholarly decision based on his or her own reason and logic." *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 732 (3d Cir. 2004).

56.    The trial court substituted its own legal theory for Appellant's arguments without engaging Appellant's factual premise that no drafted QDRO existed, and that counsel sought to award additional attorney fees directly to himself in connection with the **ERISA** funds. The party presentation principle exists precisely to prevent this. *Sineneng-Smith*, 590 U.S. at 375-76. That sequence conflicts with the party-presentation principle and exceeds the neutral judicial role, ROA.99-101,

regardless of whether the doctrine might otherwise have been available had the plaintiff actually appeared and invoked it. ROA.99-101.

57.     *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 477-480 (1977) and *Swisher v. Brady*, 438 U.S. 204, 216 n.11 (1978) point the **same** way: *Younger* principles of comity are **not** offended when the State elects **not** to insist on abstention. Appellant preserved the waiver/*sua sponte* objection in his objections to the FCR, arguing that *Younger* is prudential and waivable, that Appellee had **not** appeared or sought abstention, and that the FCR supplied comity *sua sponte*. ROA.88. The point was later reiterated in the amended IFP record. ROA.149–50. A federal court therefore should be *disinclined* to invoke *Younger* on behalf of a party who did **not** ask for state forum. Here that is precisely what occurred. ROA.80; ROA.99-101.

58.     Because the district court supplied <u>a waivable, non-jurisdictional abstention defense on its own initiative</u>, for a plaintiff who did **not** move to remand, the remand order should be vacated on that ground alone.

II. The removed petition was **not** a true *Juidic*e-type contempt proceeding.

59.     *Younger* after *Sprint* extends **only** to three exceptional categories: ongoing criminal prosecutions, certain quasi-criminal civil enforcement proceedings, and civil proceedings involving certain orders **uniquely** in furtherance of the state courts' ability to perform their judicial functions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S.

69, 78, 81-82, 91 (2013). *Juidice* illustrates the third category because the federal suit there *interfered* with an actual state *contempt* process.

60.     *Google, Inc. v. Hood* confirms that *Sprint* requires categorical discipline before *Younger* applies. The Fifth Circuit held that *Younger* is limited to *Sprint*'s three exceptional categories and that the court must determine whether the state proceeding fits one of those categories. *Google, Inc. v. Hood*, 822 F.3d 212, 222–24 (5th Cir. 2016). That published Fifth Circuit rule matters here because the district court treated the contempt label as dispositive without first deciding whether this mixed **ERISA**-implementation, clarification, fee, and possible-future-contempt petition actually fit *Sprint*'s third category.

61.     This petition did **not** fit that model. It did **not** merely ask the court to punish disobedience of a clear, existing command. Its prayer sought four kinds of relief: immediate plan-related implementation orders; QDRO-completion orders; a money judgment for attorney's fees, expenses, and costs payable directly to private counsel; and only then contempt sanctions, plus alternative clarification if the decree was "not specific enough to be enforced by contempt." ROA.17.

62.     A petition that seeks clarification because the existing decree is "not specific enough to be enforced by contempt" is **not** the kind of already-ripe state contempt proceeding *Juidice* addressed; it is a request to create or refine obligations for *future* enforcement. That structure matters because contempt was pleaded as **only** one

possible enforcement mechanism among several forms of substantive relief, **not** affirmatively as the exclusive judicial process allegedly threatened by the federal suit. A state action *cannot* escape **ERISA** preemption merely by appending a vague, one-line request for enforcement relief.

63.     Texas contempt law confirms the distinction. Contempt requires a clear, specific, and unambiguous order that tells the respondent exactly what must be done. *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967). Here the petition itself recognized that the decree might **not** satisfy that standard. ROA.17. Appellant's motion to dismiss also cited *Tex. Fam. Code §§ 9.008(b)–(d)*, and *9.012*, and argued that the petition lacked a valid contempt predicate because **no** court-signed QDRO or clear decree provision supported contempt, ROA.74–75, which reinforce the same point: if a property-division order is **not** specific enough for contempt, the remedy is clarification first, **not** immediate punishment for violating terms that were never previously definite and enforceable. *Section 9.012* reinforces that point because a clarifying order may **not** be given retroactive contempt effect and **must** be followed by a reasonable time to comply before contempt may issue.

64.     Appellant made the same point in his Answer, filed the same day as the FCR and already in the record before the district court's claimed de novo review: the proceeding was "properly characterized as a property-division dispute over ERISA plan benefits, **not** the type of core contempt or quasi-criminal enforcement action to

which *Younger* and related abstention doctrines give special deference." ROA.72 [¶56].

65.    Other courts have rejected attempts to stretch *Younger* to ordinary civil proceedings merely because contempt might someday be available. In *TitleMax*, the Third Circuit held that a petition action presenting **only a possibility of contempt** did **not** create the type of judicial contempt process with which a federal case could interfere. *TitleMax*, 24 F.4th at 237-38. *Smith & Wesson* reinforced the same point, explaining that if a **mere threat of contempt** were enough, courts would have to abstain in **nearly every civil case** because contempt is generally available to enforce court orders. *Smith & Wesson*, 27 F.4th at 894-95.

66.    *Malhan* likewise held that *Sprint* narrowed *Younger*'s domain and that family-court support orders are merely the output of judicial functions, **not** mechanisms **uniquely** in furtherance of them. *Malhan*, 938 F.3d at 461-63. The Eighth Circuit relied on the **same** reasoning in *375 Slane Chapel Rd.*, 53 F.4th at 1127-29. As *Smith & Wesson* explained**,** the key thread linking *Juidice* and *Pennzoil*: "the substantive outcome had **occurred**; **only** enforcement **remained**, and the Supreme Court refused to impede that enforcement." *Smith & Wesson*, 27 F.4th at 894. That thread is absent here.

67.    This case falls on the *TitleMax*/*Smith & Wesson* side of the line, **not** the *Juidice* side: when Appellant removed, there was at most a possibility of future contempt,

**not** an existing contempt adjudication or an already-ripe judicial contempt process uniquely in furtherance of the state court's ability to perform its judicial functions. The district court took the opposite approach by treating a petition that itself sought clarification and future contempt as if it already involved the type of existing judicial contempt process *Juidice* protects.

68. The same record detail sharpens the point here. The petition sought to force Appellant personally to process a retirement-plan disbursement even though, as Appellant's Answer explained, **ERISA**'s QDRO mechanism *assigns* the qualification and disbursement functions to the *plan administrator* once a valid order exists. ROA.62-73. Until a domestic relations order was determined to be a QDRO, Appellee had no presently enforceable alternate-payee right to compel payment from the plan. That preserved point is confirmed by **ERISA**'s statutory structure: even *after* receipt of a domestic relations order, the statute does **not** authorize *immediate* participant-side surrender of disputed funds, but instead requires the administrator to separately account for amounts in dispute while qualified status is being determined and applies an 18-month framework before unresolved segregated amounts are released as though **no** order existed, *29 U.S.C. § 1056(d)(3)(H)(i)–(v)*.

69. Even if state law allowed a court, through its continuing Chapter 9 jurisdiction, to require cooperation in preparing, correcting, or clarifying a domestic-relations order, that is **not** what this petition sought. The petition's own demand for

more information to prepare that paperwork confirmed that the process was **incomplete** and that any future contempt rested only on a *hypothetical* later order, **not** an already-existing judicial contempt process. The same record also showed that **no** charged plan-administrator review fee yet existed, further undercutting any portrayal of the petition as a simple effort to punish a completed violation of an already-operative decree. ROA.17; ROA.62-73.

70. More importantly, the petition demanded *immediate* disbursement itself, ROA.17 — an act **ERISA** assigns to the plan administrator, **not** to the participant — and **ERISA**'s separate-accounting and 18-month segregated-amounts mechanism confirms that disputed payment timing is handled through the **administrator-controlled** QDRO process, **not** through contempt-backed immediate payout. That is **not** ordinary contempt enforcement. It is an attempt to use the state court's contempt power — including the coercive threat of incarceration for noncompliance — as a vehicle to force surrender of disputed **ERISA**-governed funds *before* **ERISA**'s own safeguards have been satisfied. In substance, the petition sought to leverage the prospect of contempt to obtain extra attorney-fee recovery from **ERISA**-protected assets before any valid QDRO created a presently enforceable plan-payment obligation.

71. That shift in mechanism matters. The petition did **not** simply ask the state court to enforce an already-completed **ERISA**-compliant QDRO. It sought to place

the act of disputed plan disbursement on Yan personally, ROA.17, using contempt pressure to make him effectuate the transfer himself. That is **not** *Juidice*-type contempt enforcement; it is plan-related coercive relief in contempt form.

72. Nor is this *Walker v. City of Birmingham*, 388 U.S. 307 (1967), where parties knowingly violated an already-issued injunction and later sought to resist contempt collaterally. Here there was no contempt adjudication, no existing judicial contempt process, and the federal court still had to decide the threshold **ERISA** question before resorting to prudential abstention. *Kolwe* does **not** control **not** only because it is unpublished, but because it involved a *straightforward* contempt motion, whereas this petition sought implementation, QDRO-completion, direct-to-counsel monetary relief, and only then contempt, plus clarification if contempt was **not** yet available. Here Appellant's point was the opposite: the petition's substance showed that it was **not** yet a true contempt matter at all. ROA.74; ROA.80-98.

73. Even if this Court conducts its own *Sprint* taxonomy analysis independent of *Kolwe*, the result is different for the same reason. *Juidice* protects an already-existing judicial contempt process. Here the petition itself admitted that the decree might **not** yet support contempt and sought clarification before contempt could issue. On this record, there was **no** existing contempt process to protect, only the *possibility* of future contempt *after* additional judicial action. Extending *Juidice* to that setting would move beyond *Kolwe* and into the very territory *TitleMax* and *Smith & Wesson*

held *Sprint* does **not** permit. This Court should therefore hold that a domestic-relations enforcement petition does **not** fall within *Sprint*'s third category when the petition itself acknowledges that the existing order may be too indefinite for contempt and seeks clarification as an alternative form of relief.

74. That limiting principle is essential because the contrary rule would create an easy evasion device. If a petitioner who alleges **no** violation of an existing clear order can transform a new civil enforcement petition into a *Juidice* proceeding merely by adding one possible or conditional contempt request, then *Sprint*'s clarification of *Younger* would become functionally meaningless. Any state-court petitioner could plead extensive non-contempt relief—implementation, clarification, fee recovery, turnover, injunction, plan-directed relief, or other coercive remedies—and add one line requesting possible contempt, thereby evading federal jurisdiction without satisfying *Sprint*'s exceptional-category requirement. *Sprint* does not permit that result. The proceeding itself must fit one of *Younger*'s narrow exceptional categories; a contempt label or possible future contempt remedy cannot convert a new attempt to obtain coercive relief into an already-ripe judicial contempt process.

III. **ERISA** complete preemption, exclusive federal jurisdiction, and anti-alienation required the district court to decide **ERISA** before abstention.

75. Even apart from the *sua sponte* problem and the misclassification problem, the district court could **not** bypass **ERISA**. The source of the claimed injury was the

alleged compelled loss of **ERISA**-governed retirement-plan assets; the source of law was **ERISA**'s anti-alienation, preemption, and civil-enforcement structure; and the source of meaningful relief was **ERISA**-centered declaratory and injunctive relief. A state-law claim is completely preempted when it duplicates, supplements, or supplants **ERISA**'s civil-enforcement scheme. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

76.     *Verizon Maryland* reinforces the same jurisdictional point: a claim seeking federal relief on the ground that state action is preempted by federal law presents a federal question under *§ 1331*. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002).

77.     The district court erred by stating that "[d]efendant, therefore, may raise any federal defenses—including the objections that federal law limits or precludes the requested relief—in the contempt proceeding itself and through the state appellate process." ROA.100. "ERISA is a statute unique in its preemptive effect. The statute includes an express preemption clause—any state law that "relate[s] to any employee benefit plan" is preempted—**which is so broadly worded that the Supreme Court has struggled to draw boundaries around its scope**." *Sherfel v. Newson*, 768 F.3d 561, 564 (6th Cir. 2014). But the district court's framing reduced **ERISA** to a mere state-court defense. That was the error: **ERISA** complete preemption was **not** merely a defense to contempt; it was the jurisdictional predicate for removal, and *§*

*1132(e)(1)* assigns *§ 502(a)(3)*-type equitable relief to the exclusive jurisdiction of the federal courts, regardless of how the state petition labels the requested relief. Treating **ERISA** as something Appellant could simply "raise" later in a newly filed state contempt proceeding defeats the removal, complete-preemption, and exclusive-jurisdiction structure Congress created.

78. The Fifth Circuit has likewise recognized both that claims within **ERISA**'s civil-enforcement field are removable and that **ERISA** grants federal courts jurisdiction "separate and apart" from the statute's articulation of causes of action. *Arana v. Ochsner Health Plan, Inc.*, 338 F.3d 433, 437-40 (5th Cir. 2003) (en banc); *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013). The district court's logic collapses the distinction between ordinary preemption as a state-court defense and complete preemption as a federal jurisdictional predicate. If **ERISA** complete preemption can be reduced to a defense that Appellant must raise and lose in state court, then the federal question Congress made removable—and the *§ 502(a)(3)* equitable relief Congress assigned to exclusive federal jurisdiction—would be forced into state appellate review. That approach would *functionally* **nullify** Congress's jurisdictional allocation.

79. The Fifth Circuit has recognized that **ERISA** preemption reaches state action having the force of law in this field. See *E-Systems, Inc. v. Pogue*, 929 F.2d 1100, 1103 (5th Cir. 1991). *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218–19 (5th

Cir. 1992), makes the point even more directly: a state-law cause of action does **not** escape ERISA preemption merely because it arises under a general-law device with no intrinsic connection to benefit plans. And *Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891 (5th Cir. 2023), reiterates the breadth of **ERISA**'s 'relate to' preemption. Those Fifth Circuit authorities strengthen the point that styling this dispute as "contempt" could **not** relieve the district court of its duty to decide **ERISA** first. ROA.80-98.

80.    That standard is met here. The petition sought compelled retirement-plan disbursement, compelled provision of information needed to complete a QDRO, attorney's fees and costs directly tied to enforcing a plan division, and clarification of decree language governing the plan. Those requests required adjudication of rights and obligations relating to an **ERISA**-governed plan. They did **not** remain merely collateral state-law sanctions. ROA.17.

81.    Properly understood, the petition sought to transform an additional **ERISA**-fund dispute into supposed QDRO enforcement and to obtain extra attorney-fee recovery from **ERISA**-protected assets before any valid QDRO existed. The petition also sought a money judgment payable directly to counsel, which made the requested fee relief less like ordinary contempt implementation and reinforced that the petition was operating inside, or at minimum attempting to supplement, **ERISA**'s remedial field rather than merely invoking a state court's contempt machinery.

82.    The complete-preemption analysis does **not** turn on the label Appellee placed on the petition. *Davila* asks whether the claim, **in substance**, could have been brought under **ERISA** *§ 502(a)* and whether any independent legal duty is implicated. A plaintiff therefore cannot avoid complete preemption simply by styling a claim as state contempt enforcement. Here the petition sought affirmative plan-related relief — compelled disbursement of **ERISA**-governed assets, QDRO-completion orders, and fee recovery tied to plan distribution — that could be pursued, if at all, only through **ERISA**'s own remedial structure. And the only asserted basis for immediate disbursement was a duty whose scope turned entirely on **ERISA**'s anti-alienation rule, QDRO carveout, and administrator-controlled qualification process. A decree-based label therefore does **not** answer the *Davila* independent-duty question. The only disputed duty that mattered here — whether Appellant could be compelled to cause immediate plan-related disbursement and bear fee extraction from **ERISA**-governed assets — was enforceable, if at all, only through **ERISA**'s QDRO and anti-alienation rules. On this record, the petition did **not** invoke a truly independent state-law duty separable from **ERISA**; it relabeled an **ERISA**-governed dispute as contempt enforcement. Calling the proceeding "contempt" did **not** change the source of the right asserted or the source of the limitation on relief: both turned on **ERISA**.

83. Section *514(b)(7)* does **not** defeat removal at the threshold because it saves only a state court QDRO that satisfies **ERISA**'s QDRO requirements. It does **not** transform a state-court proceeding with no entered DRO into a *§ 514(b)(7)*-excepted proceeding, and it does **not** authorize contempt-backed immediate disbursement before **ERISA**'s qualification process has occurred. Here, the petition sought immediate participant-side disbursement, QDRO-completion information, and direct attorney-fee recovery before any domestic-relations order had been determined to be a QDRO. The petition's demand for immediate participant-side disbursement is **not** the QDRO-entry function *§ 514(b)(7)* preserves; it is an attempt to compel disbursement before any qualified order exists, which *§ 1056(d)(1)* prohibits. The question is therefore **not** whether **ERISA** permits valid QDROs. It does. The question is whether a petition can bypass **ERISA**'s QDRO process by seeking <u>contempt-backed plan disbursement</u> *before* that process <u>produces a qualified order</u>.

84. A court may **not** reject **ERISA**-based removal by calling **ERISA** a defense unless it first applies *Davila*. Where removal jurisdiction turns on whether the petition seeks **ERISA**-governed relief, the district court must decide whether the petition duplicates, supplements, or supplants **ERISA** *§ 502(a)*, and whether any truly independent state-law duty supports the requested relief, before invoking prudential abstention. Here, the petition sought plan-directed relief before any valid

QDRO existed; **ERISA** was **not** merely a defense to contempt, but the disputed source of the right, the limitation on relief, and the federal remedial structure governing the requested transfer.

85. Nor can this Court affirm on that ground without first applying *Davila*. Under *Davila*, substance controls: the petition sought affirmative plan-related relief whose availability turned on **ERISA**'s anti-alienation rule, the limits of the QDRO carveout, and administrator-controlled qualification process. That made **ERISA** a live threshold question, **not** an issue the district court could bypass by calling the petition "contempt." Because removal jurisdiction turned on that question, *Sprint* and *NOPSI* did **not** permit the district court to use prudential abstention as a substitute for deciding whether **ERISA** governed first. And because the petition at least arguably duplicated, supplemented, or supplanted *§ 1132(a)(3)*-type equitable relief, *§ 1132(e)(1)* required threshold **ERISA** analysis before *Juidice* abstention. ROA.99–101.

86. *Steel Co.* reinforces that the district court could **not** assume away the jurisdictional predicate for removal while using abstention to dispose of the case. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Here, **ERISA** complete preemption and *§ 1132(e)(1)* were not merits details; they determined whether the case belonged in federal court and whether the state forum was legally adequate.

87. The district court's sole citation for its **ERISA** ruling was *Brown*. ROA.100-01. But *Brown* does **not** supply the legal analysis this remand case required. *Brown* did **not** address *Younger/Juidice*, *Sprint*, complete preemption under *Davila*, *§ 1132(e)(1)*, forum adequacy, or *Quackenbush*. At most, *Brown* is limited authority on the QDRO mechanism; it is **not** *authority* that *any state petition invoking retirement division escapes* **ERISA** *preemption or makes abstention proper*.

88. Even on its own terms, *Brown* is factually different. *Brown* involved domestic-relations orders that had already been presented to the plan administrator, and the Fifth Circuit addressed whether the *administrator* could refuse to treat those orders as qualified because it believed the underlying divorces were "sham." *Brown* **rejected** that extra-statutory inquiry and required the *administrator* to apply ERISA's objective checklist. *Brown, 647 F.3d at 223–28*. Here, by contrast, **no** signed QDRO had been submitted or reviewed, **no** qualification determination had been made, and the petition sought *immediate* disbursement, *immediate* provision of information to complete the QDRO, attorney's fees payable **directly** to counsel, and clarification if contempt was **not** yet available. *Brown* thus recognizes the QDRO path; it does **not** authorize *bypassing* the QDRO path through contempt-backed immediate payout *before* the statutory process has run.

89. Because the district court cited *Brown* as the basis for concluding that the state court was "*not preempted from hearing such claims*" and that "***all other* arguments**

53

*premised on ERISA preemption theory also **fall flat**,*" *Brown* cannot bear that weight. ROA.140. A case about the *administrator*'s <u>checklist-based review</u> of already-submitted domestic-relations orders does **not** resolve whether this no-QDRO, immediate-disbursement, contempt-backed petition was completely *preempted*, whether the state forum was *adequate*, or whether abstention-based remand was *available*. Those questions remained to be decided under *Davila*, *Arana*, § *1132(e)(1)*, and *Quackenbush* rather than by label substitution.

90.    Even apart from the *Sprint* categories, some courts have recognized that *Younger* is inappropriate where preemption is facially conclusive or readily apparent, because no substantial state interest is served when the state tribunal is acting beyond the lawful limits of its authority. See *[GTE Mobilnet of Ohio v. Johnson](#)*, 111 F.3d 469, 475 (6th Cir. 1997) ("when the issues present facially conclusive claims of federal preemption, we will **not** abstain, but instead will decide the preemption question"); *[Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination](#)*, 70 F.3d 1361, 1370 (1st Cir. 1995); *[Colonial Life & Accident Ins. Co. v. Medley](#)*, 584 F. Supp. 2d 368, 380 (D. Mass. 2008) ("[T]he issue of **ERISA** preemption is "facially conclusive," *Younger* abstention does **not** apply"). Here, by contrast, the petition identifies an actual **ERISA**-governed 401(k), no valid QDRO, and a direct anti-alienation conflict. The district court therefore could **not** invoke *Juidice* without first confronting the pleaded **ERISA** issue on its own terms.

91. The Supreme Court has at least left open that a facially conclusive preemption claim may render abstention inappropriate, while making clear that a merely substantial preemption claim does not. *NOPSI*, 491 U.S. at 366–67. *Sirva* confirms that *Chaulk* remains the First Circuit's leading example of the facially conclusive preemption exception. See *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 197–99 (1st Cir. 2015). *Sirva* explains that preemption may be facially conclusive even when the precise issue is one of first impression, so long as preemption is beyond reasonable dispute; the exception disappears only when there are unresolved factual disputes, unsettled complexities of state law, or uncertainty about the reach of the federal preemption rule. *Id*. at 198–99. None is present here. On the record before remand, no valid QDRO existed; no unsettled question of state law had to be resolved before applying **ERISA**'s anti-alienation rule; and the relevant federal command is direct: pension benefits may **not** be assigned or alienated absent a qualifying QDRO. *29 U.S.C. § 1056(d)(1)*, *(d)(3)(A)*, *(B)(i)*. This Court should adopt that rule here: where **ERISA**'s anti-alienation provisions plainly bar the relief sought absent a valid QDRO, abstention is unavailable unless the court first determines that preemption is **not** facially conclusive.

92. **ERISA**'s anti-alienation rule independently mattered. Pension benefits may **not** be assigned or alienated except through the statute's QDRO mechanism, and that exception is **not** triggered until the plan administrator determines the order is

qualified. *29 U.S.C. § 1056(d)(1)*, *(d)(3)(A)*, *(B)(i)*. The QDRO exception thus preserves a narrow state-law role: a state court may enter a domestic-relations order that the plan administrator then reviews for qualified status. It does **not** authorize a state court to compel immediate participant-side disbursement, bypass administrator review, or extract attorney's fees from plan assets without a valid QDRO. Until that determination occurs, a state-court order compelling immediate plan-related disbursement is **not** using the QDRO exception — it is *bypassing* the administrator-controlled process **ERISA** requires.

93.     **ERISA** treats a spouse or former spouse as an alternate payee, and thus a beneficiary, only through a domestic relations order that is determined to be a QDRO. *Id. § 1056(d)(3)(J)*, *(K)*. **ERISA** also provides that, during any dispute over qualified status, the plan *administrator* **must** separately account for the amounts that would otherwise have been payable, and that the statute's segregated-amounts mechanism operates on an 18-month timetable running from the date the first payment would otherwise be due under the order, *Id. § 1056(d)(3)(H)(i)–(v)*. That statutory structure reinforces Appellant's preserved point that the petition's demand for *immediate* disbursement could **not** be treated as ordinary contempt enforcement. And *Kennedy* holds that plan administrators follow plan documents <u>unless and until</u> a valid QDRO satisfies **ERISA**'s requirements. *[Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan](), 555 U.S. 285, 299–301 (2009)*.

94. *Juidice* presupposes a legitimate state contempt interest in enforcing lawful orders. But a state court has **no** comparable sovereign interest in compelling what federal law forbids. Contempt is an enforcement device; it is **not** an independent source of substantive authority to override **ERISA**'s anti-alienation rule. **Nor** may contempt be used as a *vehicle* to **supersede ERISA**'s administrator-centered safeguards by <u>threatening incarceration</u> to compel *immediate* disbursement of disputed plan funds.

95. This is the preserved question of exceptional importance in the case. If a state petitioner may defeat **ERISA** removal simply by styling an implementation-and-fee petition as "contempt," then **ERISA**'s anti-alienation rule and federal jurisdiction are reduced to formalities. That unresolved collision between *Juidice* and **ERISA** should have been addressed, **not** evaded. Appellant preserved that **ERISA**/*Juidice* collision in the Rule *59(e)* record. ROA.112–13. The district court's order never mentioned **ERISA** at all. ROA.99-101.

IV. The district court's adequacy finding and de novo review rationale cannot stand.

96. The district court held that Appellant had an adequate opportunity to present any federal issues in state court. ROA.100. That conclusion fails at two levels. The issue is **not** whether Appellant could raise **ERISA** preemption as a defense in state court; he could — but raising it successfully would *terminate* the state proceeding and leave the underlying **ERISA** rights governing the plan *unadjudicated*, while

raising it unsuccessfully would have the state court *compel* what federal law *forbids*. Either way, the state forum cannot supply what *Juidice*'s adequacy prong requires: authority to actually resolve the federal question, **not** merely receive it as a defense. The real issue is that the petition sought affirmative *§ 1132(a)(3)*-type plan-related relief — including contempt-backed compelled plan disbursement and fee recovery from **ERISA**-protected assets without a valid QDRO — and the state contempt forum lacked authority to grant that relief.

97. At the threshold level, *Juidice*'s adequacy presupposes the state forum has jurisdiction to hear and resolve the federal claims at issue. **ERISA** *§ 1132(e)(1)* grants federal courts **exclusive** jurisdiction over civil actions for equitable relief under *§ 1132(a)(3)*. *ACS Recovery Servs.*, 723 F.3d at 523. A state contempt forum that lacks statutory authority to adjudicate a *§ 1132(a)(3)* claim **cannot** provide an "adequate opportunity" to resolve it — regardless of how robust its procedures may be. Congress *removed* that jurisdiction, and *Juidice*'s comity principles cannot *restore* what Congress withheld.

98. Calling the proceeding "contempt" does **not** change what the petition asked the state court to compel. Even setting aside the jurisdictional deficiency, the state contempt forum was substantively *inadequate* for the relief this petition demanded. A contempt hearing is **not** the same thing as an **ERISA** *§ 1132(a)(3)* action. It does **not** provide the same declaratory and injunctive remedies, it does **not** substitute for

the federal remedial structure Congress created, and it is a particularly poor vehicle for deciding whether plan-related acts being demanded or defended were ever legally available under **ERISA** in the first place. See *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992) (recognizing the distinct federal **ERISA** remedial structure). Appellant's preserved point was **not** merely that state courts can misapply federal law. It was that this petition sought to use contempt-type pressure to obtain plan-related relief even though the QDRO predicate was absent and the petition itself admitted that clarification might still be required before contempt could exist at all.

99. The related federal litigation concerning the same U.S. Bank retirement account reinforced that this was **not** an ordinary self-contained contempt matter. It was a **second** proceeding directed at the **same ERISA**-plan dispute while related federal claims concerning the **same** account remained pending. That overlap sharpened rather than diminished the need to decide adequacy before abstention.

100. That overlap mattered for adequacy, **not** because this appeal requires adjudication of the related allegations, but because the district court assumed an adequate state forum without addressing Appellant's record-based objection that the remanded proceeding overlapped with an **ERISA**-centered federal dispute involving the same account. ROA.94–96; ROA.99–101.

101. The district court did **not** address that record. It simply assumed Texas contempt procedure was adequate because federal defenses could be raised there.

ROA.100-101. But the adequacy question was whether the remanded forum could actually resolve the **ERISA**-governed relief the petition sought, including *§ 1132(a)(3)*-type relief and contempt-backed compelled plan disbursement without a valid QDRO.

102. That omission reinforces the need for vacatur. The district court could **not** make abstention "fully dispositive" while ignoring record-based objections showing that the case was part of an overlapping **ERISA**-centered dispute and that the specific remanded forum was **not** an adequate substitute for federal **ERISA** adjudication.

103. The record below preserved that inadequacy argument. Appellant's objections expressly challenged the adequacy of the state contempt forum, ROA.80, and explained why the petition was **not** properly treated as simple contempt. The Rule *59(e)* motion, ROA.109, then sharpened the same points and added that the remand order did **not** address **ERISA** at all.

104. The district court's order did **not** address Appellant's Answer, filed the same day as the FCR and already in the record before de novo review, even though that pleading had already catalogued the anti-alienation, no-QDRO, plan-administrator-control, and federal-impossibility points showing why the state contempt forum was **not** an adequate substitute for a federal **ERISA** action. ROA.61-72. Those arguments were therefore in the record before the district court acted. And the *Rule*

*59(e)* motion did **not** raise a new **ERISA** theory; it sharpened the same no-QDRO, anti-alienation, adequacy, and sequencing objections already presented in the Answer and objections.

105.  The district court's own order shows that the required de novo review did **not** occur in any meaningful sense. The order announced that abstention alone was dispositive, did **not** discuss **ERISA** or complete preemption, and even misidentified the objecting party. It also misstated the date of the FCR itself, stating that the magistrate judge issued the FCR on "November **11**, 2025," ROA.99, even though the docket shows ECF No. 7, ROA.59, was entered on November **25**, 2025. Those features do **not** prove bad faith by the court, but they do show that the order never actually engaged the central federal objections before remanding.

106.  If this Court concludes that *Juidice* might otherwise be relevant, vacatur is still required because the district court treated abstention as automatic despite record-based objections showing that the supposed contempt proceeding lacked a clear, presently enforceable predicate. ROA.99-101.

**V.** Even if abstention were otherwise available, *Quackenbush* and *Deakins* barred outright remand—or at minimum required stay analysis.

107.  The district court also used the wrong remedy. ROA.99-101. *Quackenbush* holds that federal courts may dismiss or remand cases on abstention grounds only where the relief sought is equitable or otherwise discretionary, and that abstention

principles support at most a stay — never outright remand — where the relief is monetary and non-discretionary. 517 U.S. at 730-31.

108. This case presents a straightforward *Quackenbush* problem: whether a federal court may remand an action wholesale when the removed petition expressly sought a monetary judgment <u>payable directly to private counsel</u> from **ERISA**-protected plan assets before any valid QDRO created an enforceable payment right. ROA.17. This Court should hold that, at minimum, a removed petition containing an express prayer for a money judgment payable directly to private counsel may **not** be remanded in full on abstention grounds.

109. Under *Quackenbush*, abstention may support dismissal or remand only where the relief sought is equitable or otherwise discretionary; where the action includes a legal monetary component, the federal court may at most stay that component. **ERISA** reinforces that conclusion here because the demanded payment was asserted from plan assets notwithstanding **ERISA**'s anti-alienation rule and without any showing that the remanded state proceeding could lawfully supply that relief.

110. The fee demand here falls entirely outside the fiduciary-defendant framework that governs equitable characterization under **ERISA**. Private divorce counsel seeking a personal money judgment from **ERISA**-protected plan assets holds no fiduciary status, occupies no trustee role, and commands no surcharge remedy. The equitable framework that applies to fiduciary defendants under *CIGNA Corp. v.*

*Amara*, 563 U.S. 421 (2011), and *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448 (5th Cir. 2013), has no foothold here. See *Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.*, 162 F.4th 532, 542–44 (5th Cir. 2025).

111. What matters for present purposes is that the petition did **not** seek surcharge against a fiduciary, restitution from a trustee-like defendant, or enforcement of an existing equitable lien over specifically identifiable funds already in counsel's possession. It expressly sought a money judgment "in favor of the attorney" and to be "paid directly to the undersigned attorney," ROA.17. i.e., a present money judgment payable to nonfiduciary private counsel.

112. Texas law confirms the same legal character. In a post-divorce enforcement proceeding, *Tex. Fam. Code § 9.014* authorizes attorney's fees to be paid directly to the attorney and enforced by the attorney in the attorney's own name as a judgment for debt. That feature underscores — rather than softens — the *Quackenbush* problem: even if Texas treats the fee request as part of an enforcement proceeding, the relief still includes a debt-like money judgment payable directly to counsel. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of legal relief."); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)(suits seeking to compel the defendant to pay a sum of money to the plaintiff are suits for money damages; injunction compelling payment of money is **not** typically available in equity); *Montanile v. Bd. of Trs. of*

*Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 148 n.3 (2016)(the Court's interpretation of equitable relief in *Mertens*, *Great-West*, and *Sereboff* "remains unchanged"); *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006).

113. Under *Mertens* and *Great-West*, a claim seeking personal liability to pay money is legal relief, and *Montanile* confirms that equitable enforcement depends on specifically identified funds in the defendant's possession, **not** a free-floating demand for payment. This fee demand therefore fell on the legal side of the line for *Quackenbush* purposes.

114. A fee demand that exists **only** to enforce what federal law prohibits is **not** ancillary equitable relief. Labeling the fee request ancillary does **not** solve the problem. The request for payment to counsel appeared in the petition's express prayer for relief, and a legal monetary demand does **not** become equitable merely because it was pleaded alongside requests styled as enforcement or contempt. The district court therefore could **not** remand the entire action without confronting *Quackenbush*'s limit on abstention-based remand of legal claims.

115. The petition's request for a monetary judgment payable directly to counsel was part of the express prayer for relief, **not** a collateral afterthought. That feature made the case materially less like a purely equitable contempt-enforcement proceeding. The district court specifically reasoned that the anti-remand rule does **not** apply where the underlying claim is equitable in nature and the only supposed

damages are attorney's fees, expenses, and costs. ROA.140. That premise fails twice. First, the fee demand was legal relief: the petition sought a money judgment in favor of counsel, and *Tex. Fam. Code § 9.014* makes such an award enforceable by counsel in counsel's own name as a judgment for debt. Under *Great-West* and *Mertens*, a demand to compel payment of money is legal relief regardless of label. Second, even accepting some equitable character, *Quackenbush* still required stay analysis rather than wholesale remand. [*Deakins v. Monaghan*, 484 U.S. 193, 202–03 (1988)](#) confirms the same stay-not-termination principle when monetary relief cannot be redressed in the state proceeding.

116. The adequacy problem independently requires vacatur. The district court never analyzed whether the remanded state proceeding could lawfully award the specific fee payment demanded consistently with **ERISA**'s preemption and anti-alienation provisions. **ERISA** *§ 514(a)* preempts state laws insofar as they relate to an employee benefit plan, and *§ 1056(d)(1)* bars assignment or alienation of pension benefits absent a qualifying QDRO. ROA.99–101. Where a fee demand is tied to compelled payment from **ERISA**-governed plan assets before any valid QDRO creates an enforceable payment right, a state contempt proceeding is **not** an adequate substitute forum for that monetary demand.

117. That omission matters because *Younger* presupposes an available state forum; it does **not** authorize a federal court to remand legal monetary claims while ignoring

whether the state forum can lawfully adjudicate the relief demanded. The court could **not** rely on adequacy in the abstract while bypassing the concrete **ERISA** limits on the fee award sought here.

118.   The same point follows from the removal statutes. By its terms, *§ 1447(c)* authorizes remand only for lack of subject-matter jurisdiction or a timely raised defect in removal procedure. See *BEPCO, L.P. v. Santa Fe Minerals, Inc.*, 675 F.3d 466, 471 (5th Cir. 2012); see also *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28 (1995); *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46 (1976). A prudential abstention doctrine is **not** a jurisdictional defect under *28 U.S.C. § 1447(c)*.

119.   That is why this Court has appellate jurisdiction over this remand at all: an abstention-based remand is distinct from a *§ 1447(c)* remand and is reviewed under *Quackenbush* rather than the removal statutes. *Grace Ranch*, 989 F.3d at 310-11. Once the case was removed, the district court could **not** remand simply because it preferred the state forum on comity grounds while leaving unresolved whether federal-question jurisdiction existed. ROA.99-101.

120.   At minimum, if the district court believed abstention principles had some partial role to play, it had to retain the case and consider whether a narrower stay was appropriate. It could **not** remand the entire removed action without first

resolving the **ERISA** questions and without accounting for the petition's monetary component.

**Conclusion**

121.  The removed petition did **not** merely seek contempt. It sought immediate retirement-plan disbursement, QDRO-completion orders, direct attorney-fee recovery payable to counsel, and clarification if the decree was **not** specific enough to enforce by contempt. Appellant had violated **no** existing clear state-court order requiring immediate **ERISA**-plan disbursement; the petition instead sought new coercive relief to reach **ERISA** assets before any valid QDRO existed. Under *Sprint* and *Juidice*, that was **not** an already-ripe judicial contempt process supporting *Younger* abstention. That error matters beyond this record because allowing one possible contempt request to control the whole petition would give state-court litigants an easy pleading device to evade *Sprint* and defeat federal adjudication of otherwise removable disputes.

122.  Vacatur is also required because the district court made abstention fully dispositive without first deciding **ERISA**. The petition sought relief concerning an **ERISA**-governed retirement plan before any valid QDRO existed. **ERISA**'s anti-alienation rule, QDRO framework, and *§ 1132(e)(1)* required threshold **ERISA** analysis; *Brown* did **not** supply it.

67

123. At minimum, the case should be remanded for full consideration of Appellant's preserved objections: whether any *Juidice*/*Sprint* category applies, whether the state forum is adequate for **ERISA**-governed relief, and whether *Quackenbush* and *Deakins* barred outright remand—or at minimum required a stay.

124. Appellee did **not** appear, move to remand, or invoke *Younger*. The district court nevertheless supplied *Younger* on Appellee's behalf, supplied answers to Appellant's waiver, adequacy, **ERISA**-preemption, and remedial objections, and resolved those objections against Appellant under a non-jurisdictional doctrine **no** party presented. *Younger*'s prerequisites and limitations must be tested through adversarial presentation, **not** supplied and resolved by the court itself. This Court should **not** affirm a dispositive order produced by that process.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
Defendant-Appellant, Pro Se

## Certificate of Service

I certify that on April 26, 2026, a true and correct copy of this brief and addendum was served on all parties or counsel of record through the Court's

CM/ECF system or by any other method required by the Federal Rules of Appellate

Procedure and the Fifth Circuit's rules.

*/s/ Conghua Yan*
Conghua Yan

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure *32(a)(7)* because it contains 12,689 words, excluding the parts of the brief exempted by *Rule 32(f)*.

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure *32(a)(5)* and *32(a)(6)* because it was prepared in Microsoft Word using a proportionally spaced, 14-point Times New Roman font.

*/s/ Conghua Yan*
Conghua Yan
